Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial[1]

| | | |
|---|---|---|
| FÉLIX VARGAS CORREA<br><br>Parte Recurrida<br><br>v.<br><br>THOMPSON CONSTRUCTION GROUP, INC.<br><br>Parte Peticionaria | TA2026CE00415 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm. PO2024CV02208<br><br>Sobre:<br><br>Despido Injustificado; Discrimen por edad |

Panel integrado por su presidente, el juez Candelaria Rosa, el juez Adames Soto, el juez Campos Pérez y la jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece la parte peticionaria, Thompson Construction Group, Inc. (Thompson Construction o peticionaria), y solicita que revisemos la *Resolución Interlocutoria* emitida y notificada el 10 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante el referido dictamen, el TPI declaró No Ha Lugar la solicitud de sentencia sumaria presentada por Thompson Construction.

Examinado el recurso y la resolución interlocutoria cuya revisión se solicita, *denegamos* el auto de *certiorari*.

### I. Trasfondo fáctico y procesal

El 8 de agosto de 2024, Félix Vargas Correa (Vargas Correa o recurrido), presentó una demanda sobre despido injustificado y discrimen por edad contra Thompson Construction.[2] En ella, alegó

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.

[2] Entrada Núm. 1 SUMAC TPI. El recurrido presentó sus causas de acción al amparo de varios estatutos laborales, a saber: la Ley Núm. 80-1976, conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80); la Ley Núm. 100-1959, conocida como *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq.* (Ley Núm. 100), y; la Ley Núm. 111-2020, conocida como la *Ley*

que trabajó por un año y nueve meses en el puesto de "*laborer*" para la peticionaria, quien lo despidió sin justificación ni aviso previo. Además, adujo que su despido, además de injustificado, estuvo revestido de un carácter discriminatorio por razón de su edad, ya que este tenía sesenta y cinco (65) años, y se retuvieron empleados más jóvenes y de menor antigüedad en el mismo puesto que ocupaba.

Por último, sostuvo que Thompson Construction incumplió con su obligación de reservarle su empleo durante el tiempo que estuvo incapacitado. Por todo lo anterior, afirmó tener derecho a una indemnización por concepto de mesada, así como a una cuantía por concepto de angustias mentales y emocionales.

El 18 de octubre de 2024, Thompson Construction contestó la demanda.[3] Tras negar todas las alegaciones en su contra, invocó varias defensas afirmativas, entre ellas, que redujo su fuerza laboral mediante un proceso de cesantías que afectó al señor Vargas Correa y a otros empleados de distintas clasificaciones ocupacionales, motivado por razones de negocios. Ante ello, esbozó que el despido fue uno justificado y no discriminatorio, ya que retuvo a otros empleados en la misma clasificación ocupacional basándose en ciertos criterios objetivos contemplados en la Ley Núm. 80.[4] Por último, expresó que al recurrido no le cobijaba la reserva de empleo contemplada por la Ley Núm. 111.

Tras varias incidencias procesales, el 14 de enero de 2025 se celebró la conferencia inicial,[5] en la cual el TPI estableció el 30 de junio de 2025 como la fecha límite para concluir el descubrimiento de prueba, luego de la cual las partes tendrían un término de treinta (30) días para presentar mociones dispositivas. No obstante,

---

[3] *de Protección Social por Accidentes de Vehículos de Motor*, 9 LPRA sec. 3161 *et seq.* (Ley Núm. 111).

[3] Entrada núm. 6 de SUMAC TPI.

[4] Entre ellos, la capacidad, la productividad, el desempeño, la competencia, la eficiencia o el historial de los empleados evaluados.

[5] Entrada núm. 14 de SUMAC TPI.

debido a controversias persistentes durante el descubrimiento de prueba, el TPI concedió hasta el 14 de noviembre de 2025 para concluir el descubrimiento de prueba y hasta el 23 de diciembre de 2025 para la presentación de las mociones dispositivas.[6]

Así las cosas, el 23 de diciembre de 2025, Thompson Construction presentó una *Moción de Sentencia Sumaria*[7]. En esta, reafirmó sus alegaciones previas, y solicitó la desestimación con perjuicio de todas las causas de acción presentadas por el señor Vargas Correa, por no existir controversias de hechos en cuanto al verdadero motivo del despido impugnado.[8]

En particular, precisó que el despido del recurrido fue justificado por haberse producido como parte de un plan de reorganización *bona fide* para mitigar las presuntas pérdidas económicas que sostuvo su negocio desde el 2018, lo cual afectó a un total de setenta y siete (77) empleados de diferentes clasificaciones ocupacionales. Adujo que tal acción es una permitida bajo el Artículo 2 de la Ley Núm. 80, por lo que se configuró la justa causa para el despido del recurrido. Esto, pues, sostuvo que presentó evidencia de la existencia y del propósito del referido plan.

Respecto al discrimen por edad, insistió en los motivos económicos que propulsaron la presunta reorganización para rebatir dicha alegación. Añadió que el puesto del señor Vargas Correa no fue sustituido, sino que el mismo se eliminó como parte de la reorganización aludida. De otro lado, esgrimió que el recurrido no logró establecer un caso *prima facie* de discrimen bajo el esquema probatorio actual. En la alternativa, arguyó que la evidencia

---

[6] Entrada núm. 28 de SUMAC TPI.

[7] Entrada núm. 29 de SUMAC TPI.

[8] Para sustentar sus planteamientos, la peticionaria sometió los siguientes documentos: i) el formulario de contratación del señor Vargas Correa; ii) una declaración jurada de Curtis Hutto, vicepresidente y director financiero de Thompson Construction; iii) varias porciones extraídas de la deposición tomada al señor Vargas Correa el 16 de abril de 2025; iv) una declaración jurada de Jeremy Lane, vicepresidente de recursos humanos de Thompson Construction; v) el aviso de terminación de empleo del señor Vargas Correa, y, vi) un documento sobre las presuntas ganancias y pérdidas anuales de Thompson Construction para los años 2018 al 2025.

sometida estableció una razón legítima y no discriminatoria para el despido impugnado, para lo cual el recurrido no había ofrecido prueba en contrario. Finalmente, sobre la reserva de empleo por incapacidad, sostuvo que la misma no era exigible en el caso de marras o, alternativamente, que esta cedía por tratarse de un despido justificado al amparo del proceso de reestructuración operacional.

El 29 de diciembre de 2025, el TPI notificó una *Orden* mediante la cual le concedió al recurrido un término de veinte (20) días para fijar su posición en respecto a la moción dispositiva de la peticionaria.[9] Transcurrido el referido término sin respuesta del señor Vargas Correa, el 22 de enero de 2026, Thompson Construction solicitó la adjudicación de su solicitud de sentencia sumaria en ausencia de oposición y, en consecuencia, que se procediera con la desestimación de la reclamación del recurrido.[10]

Sin embargo, al día siguiente, el señor Vargas Correa solicitó una breve prórroga para cumplir con lo ordenado,[11] por lo cual el TPI le concedió un término perentorio de cinco (5) días mediante *Orden* del 23 de enero de 2026.[12] Mientras, el 28 de enero de 2026, las partes presentaron conjuntamente el *Informe de Conferencia entre Abogados*.[13]

El 30 de enero de 2026, el señor Vargas Correa presentó su *Moción en Oposición a Sentencia Sumaria*.[14] A grandes rasgos, alegó que Thompson Construction no comunicó claramente el presunto plan de reestructuración ni presentó prueba concreta de su existencia o de las supuestas pérdidas económicas. Asimismo, sostuvo que esta tampoco acreditó los criterios objetivos que utilizó para justificar la retención de empleados más jóvenes y de menor

---

[9] Entrada núm. 30 de SUMAC TPI.
[10] Entrada núm. 31 de SUMAC TPI.
[11] Entrada núm. 32 de SUMAC TPI.
[12] Entrada núm. 33 de SUMAC TPI.
[13] Entrada núm. 35 de SUMAC TPI.
[14] Entrada núm. 37 de SUMAC TPI.

antigüedad. Debido a la retención aludida, afirmó que se generó una inferencia razonable de discrimen por edad en su contra. Con relación a la reserva de empleo, adujo que la peticionaria los despidió en contravención del deber que le impone la Ley Núm. 111.

A base de todo lo anterior, sostuvo que el TPI no podía adjudicar sumariamente sus reclamaciones, en la medida que resultaba necesario dilucidar en sus méritos las cuestiones sobre la legitimidad de la reorganización y de las pérdidas económicas alegadas por Thompson Construction, así como ponderar la credibilidad de la peticionaria respecto a la intención real respecto a su despido. Además, afirmó que el foro primario debía evaluar la razonabilidad y objetividad de los criterios utilizados por la peticionaria para retener a los empleados de menor edad y de menor antigüedad.

Con el beneficio del referido escrito, el 2 de febrero de 2026, el TPI dio por sometido para su consideración el asunto de la solicitud de sentencia sumaria.[15]

En consecuencia, el 10 de marzo de 2026, el TPI emitió la *Resolución Interlocutoria* cuya revisión se solicita.[16] En el referido dictamen, el TPI consignó los siguientes hechos, los cuales calificó como incontrovertidos:

1. El demandante comenzó a trabajar para Thompson Construction el 12 de septiembre de 2022, en la posición de "laborer".

2. Durante su empleo en Thompson Construction, el demandante siempre ocupó la misma posición de "laborer".

3. El salario más alto devengado por el demandante fue de $15.00 por hora.

4. El 7 de junio de 2024, Thompson Construction le informó al demandante de su terminación de empleo.

5. El demandante, Félix Vargas Correa, inició su empleo con Thompson Construction Group, Inc. el 12 de septiembre de 2022, en la posición de "laborer" con paga de $15.00 por hora.

---

[15] Entrada núm. 38 de SUMAC TPI.
[16] Entrada núm. 46 de SUMAC TPI.

6. El demandante nació el 23 de julio de 1959, por lo que tenía 63 años de edad al momento de su contratación.

7. Thompson Construction se dedica al negocio de la construcción y ha mantenido operaciones en Puerto Rico desde el año 2018.

8. Entre mayo de 2024 y octubre de 2025, Thompson Construction despidió un total de 77 empleados en Puerto Rico por razones económicas y de restructuración del negocio.

9. El 7 de junio de 2024, Thompson Construction despidió al Demandante como parte de una reducción de personal por "escasez de trabajo".

10. Al momento de la cesantía, el Demandante tenía 64 años de edad.

11. El mismo día de su despido, luego de haber sido informado, el Demandante acudió a la ACCA y obtuvo una certificación.[17]

No obstante, el foro primario razonó que persistían controversias sobre los siguientes hechos materiales:

1. ¿En qué consistió el alegado plan de restructuración y reorganización implementado por la demandada?

2. Si el plan de restructuración y reorganización justificaba el despido de la parte demandante.

3. Si el patrono tomó en consideración el criterio de antigüedad dentro de la clasificación ocupacional al momento de realizar el despido de la parte demandante.

4. Las funciones de la demandante vis a vis las de los empleados retenidos, a los fines de conocer si la empresa estaba obligada a retenerla por razón de su antigüedad.

5. Si el patrono despidió al demandante por razón de su edad.

6. Si el demandante sufrió algún accidente o enfermedad que obligara al patrono a cumplir con el deber de reservarle el empleo al demandante.

De esta manera, el TPI recalcó que la peticionaria debía ponerlo en posición para auscultar la presunta pérdida económica con el fin de establecer el nexo causal entre el plan de reorganización y el despido impugnado, lo cual no se logró con la evidencia ofrecida.[18] Adicionalmente, enfatizó que de la documentación sometida tampoco surgía el proceso evaluativo

---

[17] El TPI aclaró que los primeros cuatro (4) hechos corresponden a hechos estipulados entre las partes en su *Informe de Conferencia entre Abogados*, mientras que el resto surgen de los hechos propuestos por la peticionaria en su moción de sentencia sumaria que el recurrido dio por admitidos en su oposición.

[18] En específico, con el documento relacionado a las supuestas ganancias y pérdidas anuales, el cual calificó como inadmisible mediante el mecanismo de sentencia sumaria.

utilizado para honrar o descartar válidamente el criterio de antigüedad entre los empleados retenidos y los despedidos. Por último, puntualizó que el señor Vargas Correa debía presentar prueba, en su momento, para establecer su reclamación de discrimen, así como para dilucidar la presunta falta de retención de su puesto luego de un accidente.

En virtud de lo anterior, el foro primario concluyó que no contaba con evidencia suficiente para proceder con la adjudicación sumaria de las causas de acción ante su consideración en la etapa en que se encontraban los procedimientos. Por consiguiente, el TPI declaró No Ha Lugar la moción de sentencia sumaria presentada por Thompson Construction.

Inconforme, el 7 de abril de 2026, Thompson acudió directamente ante nos vía *certiorari*,[19] y formuló los siguientes señalamientos de error:

> Erró el TPI al determinar que existen controversias de hechos que impiden que se dicte sentencia sumaria a favor de la Peticionaria.
>
> Erró el TPI al no dictar sentencia sumaria desestimando el caso.
>
> Erró el TPI al no aplicar la doctrina establecida en Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964 (2022), que establece los criterios adjudicativos aplicables a un despido por reorganización empresarial bona fide.
>
> Erró el TPI al no aplicar la "Ley de Transformación y Flexibilidad Laboral" y lo resuelto en Ortiz Ortiz v. Medtronic, 209 DPR 759 (2022), a los fines de que el peso de la prueba en casos de despido injustificado recae en el empleado.

Al día siguiente, la peticionaria presentó una *Moción Urgente en Auxilio de Jurisdicción Solicitando Paralización de los Procedimientos*, con el fin de paralizar todo trámite ante el foro primario.[20] Ese mismo día, emitimos una *Resolución* en la cual declaramos No Ha Lugar el auxilio solicitado por Thompson

---

[19] Entrada núm. 1 de SUMAC TA.
[20] Entrada núm. 2 de SUMAC TA.

Construction, y le concedimos un término de diez (10) días a la parte recurrida para presentar su postura en cuanto al recurso.[21]

El 20 de abril de 2026, el señor Vargas Correa presentó su *Oposición a Certiorari.*[22]

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

### II. Derecho Aplicable

### A. El *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[23]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[24] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según

---

[21] Entrada núm. 3 de SUMAC TA.
[22] Entrada núm. 6 de SUMAC TA.
[23] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[24] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.*, 202 DPR 478, 486 (2019).

dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[25]

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento,[26] se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[27]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el

---

[25] *Caribbean Orthopedics v. Medshape et al.,* supra

[26] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

[27] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

curso corriente de los casos ante ese foro.[28] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

En fin, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial."[29]

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil[30] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[31]

La Regla 36.1 de Procedimiento Civil[32], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[33] Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los

---

[28] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[29] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

[30] 32 LPRA Ap. V, R. 36.

[31] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[32] 32 LPRA Ap. V, R. 36.1.

[33] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[34]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[35]

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[36] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[37]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[38]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte

---

[34] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).

[35] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

[36] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

[37] *León Torres v. Rivera Lebrón,* supra, pág. 43.

[38] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

que se opone a la misma.[39] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente".[40]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[41]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas[42]*, indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[43]

Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[44] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó

---

[39] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.
[40] *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).
[41] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).
[42] *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100 (2015).
[43] *Íd.*, pág. 118.
[44] *Íd.*, pág. 119.

correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[45]

En fin, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso[46] y, además, si en derecho procede el reclamo.[47] "[C]uando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida".[48]

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[49]

### C. Despido Injustificado

La Ley Núm. 80-1976, conocida como *Ley Sobre Despidos Injustificados* (Ley Núm. 80),[50] fue creada a los fines de proteger el derecho de los obreros puertorriqueños a la tenencia de sus empleos, de una manera más efectiva.[51] Adicionalmente, busca desalentar los despidos injustificados, así como también ofrece a los obreros remedios justicieros y consustanciales con los daños causados por dichos despidos.[52] El Tribunal Supremo de Puerto Rico ha pronunciado que la referida Ley tiene un propósito social y coercitivo, pues sanciona que un patrono despida a su empleado, a

---

[45] *Meléndez González, et al. v. M. Cuebas*, supra, pág. 119.

[46] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.

[47] *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

[48] *Medina v. M.S. & D. Química P.R., Inc.,* supra.

[49] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

[50] 29 LPRA sec. 185a *et seq.*

[51] Exposición de Motivos de la Ley Núm. 80, *supra.*

[52] *Íd.*; Véase, también, *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 770-771 (2022).

menos que demuestre una justa causa para ello.[53] En atención a su propósito reparador, esta Ley siempre debe ser interpretada de manera liberal y favorable al empleado.[54]

En ese aspecto, el Artículo 1 de la Ley Núm. 80 dispone que todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que sea despedido sin que medie justa causa, tendrá derecho a recibir por parte de su patrono una indemnización, conocida comúnmente como "la mesada".[55]

Si bien es cierto que la Ley no define concretamente lo que constituye un despido injustificado, esta si ilustra aquellas instancias que constituyen "justa causa" para el despido.[56] Tales situaciones se dividen entre aquellas atribuibles a la conducta del empleado, y aquellas atribuibles al patrono.[57]

Particularmente, se entiende por justa causa para el despido de un empleado, aquella que no esté motivada por razones legalmente prohibidas y que no sea el producto del capricho del patrono.[58] También se entiende por justa causa aquellas razones que incidan sobre el buen y normal funcionamiento de un establecimiento, entre ellas:

> [...]
>
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
>
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

---

[53] *Jusino et als. v. Walgreens,* 155 DPR 560, 571 (2001).
[54] *Íd.*
[55] 29 LPRA sec. 185a; *Ortiz Ortiz v. Medtronic,* supra, pág. 771; *León Torres v. Rivera Lebrón, supra*, pág. 36.
[56] *Ortiz Ortiz v. Medtronic,* supra, págs. 771-772.
[57] *Reyes Sánchez v. Eaton Electrical,* 189 DPR 586, 597 (2013).
[58] 29 LPRA sec. 185b.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[59]

Por consiguiente, del precitado Artículo se desprende que el patrono puede despedir a un empleado por actuaciones relacionadas a la administración del negocio y a razones de naturaleza económica[60]. Aunque tales razones no son usualmente imputables a la conducta del empleado, son de tal magnitud que el despido resulta virtualmente inevitable dentro de las normas que regulan el manejo de los negocios.[61]

Nuestro Tribunal Supremo ha establecido que un patrono puede despedir a un empleado como parte de una reorganización empresarial, siempre que esta sea "*bona fide*" y producto de razones vinculadas al manejo de la empresa, y no del mero capricho patronal.[62] Ante tales circunstancias, el patrono tiene el deber de "presentar evidencia acreditativa del plan de reorganización implantado, así como de su utilidad".[63] Tal evidencia debe ir dirigida a demostrar que realmente se realizó una reorganización de buena fe y que el empleado fue despedido de acuerdo al referido plan.[64]

Ahora bien, se aclaró que el patrono no viene obligado a probar la existencia de un proceso o plan de reestructuración de alguna forma específica o particular, sino que deberá acreditar que el despido se derivó de una decisión gerencial válida conforme a sus circunstancias particulares, y no de su mero capricho o arbitrariedad.[65]

De otro lado, una baja en el volumen de producción, ventas o ganancias de una empresa puede provocar que el patrono tome las

---

[59] 29 LPRA sec. 185b.
[60] *Reyes Sánchez v. Eaton Electrical*, supra, pág. 598.
[61] *Íd.*
[62] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 985 (2022).
[63] *Íd.*, págs. 985-986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 426.
[64] *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 1001.
[65] *Íd.*, pág. 1002.

medidas que estime necesarias para limitar sus gastos o aumentar la competitividad o productividad de su establecimiento, como sería la reducción de su empleomanía.[66] Sin embargo, tal actuación solo encuentra justificación ante una disminución sustancial y de tal magnitud que la continuidad de la empresa se vea amenazada, pues no toda disminución se traduce en justa causa.[67] En ese sentido, el patrono viene obligado a presentar evidencia de la presunta disminución en la producción, ventas o ganancias de la empresa con el fin de establecer el nexo causal entre la situación financiera y la necesidad del despido.[68]

Resta por señalar que, ante un despido bajo las circunstancias antes descritas, la Ley Núm. 80 le impone al patrono la obligación de retener, preferiblemente, a aquellos empleados que cuenten con mayor antigüedad en el empleo, "siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos".[69] Es decir, tal obligación opera solamente dentro de la misma clasificación ocupacional que ostentaba el empleado despedido.[70]

Sin embargo, de manera excepcional, la referida Ley permite que el patrono soslaye el criterio de la antigüedad en aquellos casos en que exista una diferencia marcada o evidente a favor de la capacidad, productividad, desempeño, competencia, eficiencia o historial de conducta de los empleados comparados al momento del despido y de la nueva contratación[71]. Solo así, el patrono estará habilitado para seleccionar al empleado que retendrá en el puesto basado en dichos criterios.[72]

---

[66] *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 986
[67] *Íd.*, págs. 986-987.
[68] *Íd.*, pág. 986.
[69] 29 LPRA sec. 185c.
[70] *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 984-985.
[71] 29 LPRA sec. 185c.
[72] 29 LPRA sec. 185c.

### D. Discrimen por Edad

La Ley Núm. 100-1959, conocida como *Ley Antidiscrimen de Puerto Rico* (Ley Núm. 100),[73] fue aprobada con la finalidad de proteger efectivamente a los trabajadores contra el discrimen en el empleo por una diversa gama de razones, entre los cuales se encuentra la edad del empleado.[74] Para ello, la referida Ley provee una causa de acción contra el patrono que incurra en dicha conducta, para imponerle responsabilidad civil o criminal.[75]

Con la aprobación de la Ley Núm. 4-2017, conocida como la *Ley de Transformación y Flexibilidad Laboral* (Ley Núm. 4),[76] se introdujo un nuevo esquema probatorio para casos sobre reclamaciones al palio de la Ley Núm. 100. Ello, pues, a través de ella se estableció el reconocimiento de la legislación y la reglamentación federal, así como de las interpretaciones judiciales durante la aplicación de leyes como la Ley Núm. 100.[77]

En atención a ello, y de conformidad con las facultades que se le otorga mediante el Artículo 5 de la Ley Núm. 100,[78] el Secretario del Trabajo y Recursos Humanos aprobó las *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, mediante la cual se adoptó en nuestra jurisdicción el esquema probatorio desarrollado por el Tribunal Supremo de los Estados Unidos en *McDonell Douglas Corp. v. Green*,[79] aplicable a los casos de discrimen en el empleo donde no existe prueba directa.[80]

Bajo el referido esquema probatorio, el empleado tiene que establecer, en primer lugar, un caso *prima facie* de discrimen

---

[73] 29 LPRA sec. 146 *et seq.*
[74] 29 LPRA sec. 146.
[75] *Íd.*; *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025).
[76] 29 LPRA sec. 121 *et seq.*
[77] 29 LPRA sec. 123a.
[78] 29 LPRA sec. 150.
[79] *McDonell Douglas Corp. v. Green*, 411 US 792 (1973).
[80] *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, págs. 158-157. Véase, además, *Soto y otros v. Sky Caterers*, supra, citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 382-383.

mediante preponderancia de la prueba.[81] Para lograr esto, tiene que alegar y probar los siguientes elementos:

(1) Que la persona pertenece a la clase protegida por la legislación;

(2) que está cualificada para el puesto;

(3) que fue objeto de una acción adversa, y;

(4) que se benefició a otra persona que no pertenece al mismo grupo protegido.[82]

De establecerse el caso *prima facie* de discrimen, el patrono deberá demostrar que existe una razón legítima o razonable respecto a la acción adversa contra el reclamante y que no hubo un ánimo discriminatorio para la misma.[83] A estos efectos, el patrono no viene obligado a convencer al juzgador que tal explicación constituya la justa causa para el despido, sino que solo debe presentar evidencia suficiente para sostener que el motivo determinante para la acción adversa no fue discriminatorio.[84]

De esta manera, si el patrono lograse rebatir la presunción de discrimen, le corresponde al empleado demostrar que la explicación ofrecida por el patrono es realmente un pretexto para discriminar intencionalmente contra él.[85]Ahora bien, conviene aclarar que el peso de establecer el caso *prima facie* no es oneroso.[86] Asimismo, el estándar aludido versa sobre un esquema probatorio, el cual no rige la etapa inicial de las alegaciones de la demanda, sino aquella de sentencia sumaria o de juicio plenario.[87]

### E. Retención de Empleo ante Accidentes Automovilísticos

La Ley Núm. 111-2020, conocida como la *Ley de Protección Social por Accidentes de Vehículos de Motor* (Ley Núm. 111),[88] fue

---

[81] *Soto y otros v. Sky Caterers*, supra, citando a *Texas Dept. of Community Affairs v. Burdine*, 450 US 248, 252-253 (1981).

[82] *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, págs. 157-158.

[83] *Íd.*, pág. 158; *Soto y otros v. Sky Caterers*, supra.

[84] *Soto y otros v. Sky Caterers*, supra.

[85] *Íd.*

[86] *Íd.*

[87] *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, págs. 158-159.

[88] 9 LPRA sec. 3161 *et seq.*

primordialmente promulgada para establecer un sistema de seguro y compensación por accidentes de tránsito, con el fin de lograr reducir al mínimo posible los efectos económicos y sociales sobrevenidos a los familiares y dependientes de sus víctimas.[89]

Tal estatuto es parte de un régimen legislativo, "cuyo propósito es proteger el empleo de aquellos trabajadores y trabajadoras que, producto de un accidente, ya sea ocupacional, no ocupacional o como resultado de un accidente automovilístico, quedan temporeramente inhabilitados para trabajar".[90] Por ende, esta debe interpretarse liberalmente para cumplir con su propósito protector.[91]

Aun cuando no se trata de una ley propiamente laboral, en virtud de su fin reparador, dicho estatuto logra atender escenarios como "el de un trabajador que quede inhabilitado temporeramente para desempeñar sus labores como consecuencia de un accidente de tránsito".[92] Para lograr proteger al trabajador en tales circunstancias, la Ley Núm. 111 establece una reserva de empleo, la cual el patrono vendrá obligado respetar desde que sobreviene la incapacidad hasta que el empleado puede reinstalarse en su puesto, sujeto a las siguientes condiciones:

> a. que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días calendario, contados a partir de la fecha que fuere dado de alta, siempre y cuando dicho requerimiento no se haga después de transcurrido seis (6) meses desde la fecha de comienzo de la incapacidad;
>
> b. que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición; y
>
> c. que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de

---

[89] *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 966 (2011).
[90] *Íd.*, pág. 974.
[91] *Whittenburg v. Col. Ntra. Sra. del Carmen*, supra, pág. 969.
[92] *Íd.*, pág. 967.

los treinta (30) días calendario, contados a partir de la fecha en que se hizo el requerimiento de reposición.[93]

Es decir, conforme a la precitada Ley, el patrono viene obligado a reservar el empleo de un trabajador que sufre un accidente de automóvil por un periodo de seis (6) meses, a partir de dicho accidente, cuando el empleado se reporta a la Administración de Compensaciones por Accidentes Automovilísticos para recibir tratamiento.[94] Igualmente, el patrono viene obligado a reinstalar al empleado que se recupera dentro del periodo de reserva antes mencionado, siempre que el empleado lo solicite y se cumplan las condiciones que dicha Ley prescribe.[95]

### III. Aplicación del Derecho a los Hechos

En su recurso, Thompson Construction primordialmente sostiene que el TPI erró al no aplicar la normativa vigente para determinar que todos los hechos que propuso en su solicitud de sentencia sumaria quedaron incontrovertidos, por lo cual procedía la desestimación sumaria de la reclamación del señor Vargas Correa. En particular, aduce que el foro primario debió incluir como hechos incontrovertidos aquellos que el recurrido se limitó a negar por falta de conocimiento, debido a que ello constituye un incumplimiento craso con la obligación procesal que le impone la Regla 36 de Procedimiento Civil, supra.

De otro lado, arguye que el TPI incidió al apartarse de lo resuelto en *Segarra Rivera v. Int'l Shipping et al.*, supra, para denegar su solicitud por falta de evidencia que acreditara el presunto plan de reorganización, las pérdidas económicas alegadas y los criterios evaluativos utilizados para retener otros empleados. Por entender que cumplió con el estándar normativo para justificar el despido por razón de una decisión gerencial de negocios válida, lo

---

[93] 9 LPRA sec. 3164(D)(2)(a)-(c); *Whittenburg v. Col. Ntra. Sra. del Carmen*, supra, págs. 967-968.
[94] *Whittenburg v. Col. Ntra. Sra. del Carmen*, supra, págs. 974-975.
[95] *Íd.*, pág. 975.

cual entiende que también demuestra que tuvo una razón legítima y no discriminatoria, insiste que procedía dictar sentencia sumaria como cuestión de derecho.

Conforme al mandato jurisprudencial, hemos revisado detenidamente la solicitud de la peticionaria junto a la oposición del recurrido y la *Resolución* cuya revisión hoy nos ocupa, contrapuestas al marco legal previamente expuesto y a las circunstancias particulares del caso. A base de ello, concluimos que, aun cuando el asunto está contemplado en los supuestos sujetos a revisión de la Regla 52.1 de Procedimiento Civil, supra, la petición de *certiorari* no cumple con ninguno de los criterios de la Regla 40 del Reglamento de este Tribunal, supra, que justifican nuestra intervención con el dictamen recurrido.

Nótese que, si bien nuestro ordenamiento jurídico exige que una oposición a una solicitud de sentencia sumaria se fundamente con la misma especificidad con la que se promueve la solicitud, su incumplimiento procesal no conlleva necesariamente la concesión automática de esta última. Después de todo, la inexistencia de controversias sobre hechos materiales continúa siendo el criterio rector para proceder con un dictamen sumario. En virtud de ello, apreciamos que el TPI no quedó convencido con la prueba documental sometida para acreditar el presunto plan de reorganización que derivó en el despido impugnado,[96] y el proceso evaluativo utilizado para retener a otros empleados en la misma clasificación ocupacional del recurrido.

Por tanto, nos parece prudente que el foro primario determinara que, a su criterio, procedía realizar un análisis más extenso respecto a las causas de acción presentadas por el señor Vargas Correa. Ello, en atención a que la prueba le resultaba

---

[96] En particular, el documento de ganancias y pérdidas netas anuales, del cual no surge la fuente de donde surge la información que se pretendía evidenciar.

insuficiente en derecho para confirmar si, en efecto, Thompson Construction llevó a cabo un proceso de reorganización *bona fide* y si existía un nexo causal entre este, las presuntas pérdidas económicas y el despido del recurrido, o si su decisión de negocios respondió a su mero capricho. Después de todo, el TPI advirtió que su dictamen no constituía una determinación sobre el supuesto despido injustificado ni sobre el discrimen alegado, lo cual queda supeditado a lo que las partes logren probar en su momento.

De esta manera, opinamos el TPI consignó aquellos hechos materiales sobre los cuales claramente no existe controversia, así como aquellos que entiende se encuentran en controversia. La apreciación y determinación del foro primario, en forma alguna denota una actuación arbitraria, caprichosa o errónea de su parte, ni constituye un abuso de la discreción judicial de la cual goza sobre los asuntos ante su consideración. En consecuencia, le conferimos deferencia a la denegatoria del foro primario, y nos abstenemos de intervenir con el dictamen recurrido.

### IV. Parte Dispositiva

Por los fundamentos que anteceden, *denegamos* el auto de *certiorari*.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones